IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| B.C., a minor child, by and through her mother and next friend, LEANNE CAMPBELL,<br><br>Plaintiff,<br><br>v.<br><br>INDEPENDENT SCHOOL DISTRICT NO. 33 OF CREEK COUNTY, OKLAHOMA a/k/a SAPULPA PUBLIC SCHOOLS; and JOHNNY BILBY, an individual,<br><br>Defendants. | Case No. 24-cv-00059-SH |

## OPINION AND ORDER

Before the Court is Defendant Johnny Bilby's motion to dismiss.[1] Plaintiff LeAnne Campbell, as mother and next friend of B.C., a minor, alleges that B.C. was subject to bullying and sexual harassment at her middle school due to her status as a member of the LGBTQ+ community. As relevant to this motion, Plaintiff brings claims against Bilby in his individual capacity under 42 U.S.C. § 1983, contending he violated B.C.'s substantive due process and equal protection rights. The Court finds that both claims fail as pled. Plaintiff fails to plead that Bilby or his subordinates engaged in affirmative conduct, as required for the substantive due process claim. As for equal protection, the Court finds that such a claim requires a showing that Bilby acted with the requisite state of mind—here, purposeful discrimination. Plaintiff has failed to plead such intent. The Court will allow Plaintiff to move to amend.

---

[1] The parties have consented to the jurisdiction of a U.S. Magistrate Judge for all purposes under 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a). (ECF No. 16 at 5.)

## *Factual Background*

Taking the factual allegations in the second amended petition (ECF No. 5-18) as true and viewing them in the light most favorable to the nonmoving party, Plaintiff alleges as follows: B.C. was a student at Independent School District No. 33 of Creek County, Oklahoma a/k/a Sapulpa Public Schools ("SPS"), and Johnny Bilby ("Bilby") was Assistant Superintendent of SPS. (*See id.* ¶¶ 2–3, 10.) In 2022, Bilby also served as "Acting Principal" of Sapulpa Middle School (the "Middle School"). (*Id.* at 6 n.2.[2])

B.C. is a minor child who identifies as a member of the LGBTQ+ community. (*Id.* ¶¶ 1, 11.) Beginning in January 2022, during her seventh-grade year at the Middle School, B.C. was regularly bullied and sexually harassed by her classmates. (*Id.* ¶¶ 10, 24, 37.)

On January 26, 2022, a student poured applesauce on B.C.'s head while other students called her homophobic slurs.[3] (*Id.* ¶¶ 10, 12.) The next week, her headphones were stolen and destroyed. (*Id.* ¶ 17.) B.C. reported both incidents to her mother, LeAnne Campbell ("Campbell"). (*Id.* ¶¶ 16, 18.) Each time, Campbell called the school to make an official report, but school personnel never returned her calls. (*Id.*) Despite occurring in the presence of many school employees, no one investigated these incidents. (*Id.* ¶¶ 10, 17, 19.)

On February 2, 2022, students purposefully pulled off B.C.'s sweatshirt and bra during gym class. (*Id.* ¶¶ 20, 24.) After this incident, Campbell and Bilby met to discuss the continued bullying and harassment of B.C. (*Id.* ¶¶ 29–30.) The February 2022 meeting was "unhelpful." (*Id.* ¶ 30.) Bilby did not investigate the bullying, interview teacher or student witnesses, or issue any discipline. (*Id.*) Instead, his only resolution

---

[2] References to page numbers refer to the ECF header.
[3] The petition lists the various derogatory names and slurs used against B.C. (*Id.* ¶ 37.)

was to allow B.C. to finish the remainder of the school year remotely. (*Id.*)

The bullying and sexual harassment continued upon B.C.'s in-person return to class that Fall. (*Id.* ¶ 31.) In August 2022, a male student used "extremely sexually suggestive and offensive language" towards B.C. while they were both standing in the lunch line in the presence of Middle School employees. (*Id.* ¶¶ 31–32.) On November 9, 2022, B.C. hid in a school restroom after two students threatened to "jump" her. (*Id.* ¶ 35.) A school official escorted B.C. out of the restroom after Campbell called the school. (*Id.* ¶ 36.)

Further, throughout Fall 2023, B.C. was repeatedly assaulted and harassed during gym class. (*Id.* ¶ 40.) That October, she was injured while participating in a "human tug-of-war" game and was purposefully tackled in a game of touch football. (*Id.* ¶¶ 41, 43–44.) That November, students called B.C. slurs and attempted to hit her in the face during dodgeball, even though students were instructed not to intentionally aim for others' heads. (*Id.* ¶ 45–46.) Campbell again reported these incidents to Bilby, but again the school took no action. (*Id.* ¶ 47.)

No students have ever been punished for their conduct towards B.C. (*Id.* ¶ 48.)

### *Procedural Background*

Campbell filed the current operative petition on January 25, 2024. (ECF No. 5-18.) As pertinent here, the petition asserts claims against SPS and Bilby under 42 U.S.C. § 1983 for violation of 5th and/or 14th Amendment.[4] (*Id.* ¶¶ 77–97.) The petition first outlines the claims against SPS, asserting that the school denied B.C. of her rights to due process and equal protection under the law. (*E.g., id.* ¶¶ 82, 85.) The petition then alleges

---

[4] The petition also asserts claims against SPS under Title IX, 20 U.S.C. §§ 1681–1689, and the Oklahoma Governmental Tort Claims Act ("GTCA"), Okla. Stat. tit. 51, §§ 151–172. (*E.g., id.* ¶¶ 49–92.)

3

that Bilby similarly caused violations of B.C.'s federally protected rights. (*E.g., id.* ¶¶ 95–96.) The claims are brought against Bilby in his individual capacity. (*Id.* ¶ 3.) At first glance, the claims appear primarily based on Bilby's failure to train and supervise others. (*Id.* ¶¶ 93–97.) In their briefing, however, the parties treat the petition as attempting to assert claims for personal and supervisory liability.[5] (ECF No. 14 at 14–15; ECF No. 22 at 7–15; ECF No. 23 at 6–10.)

Bilby moves to dismiss under Rule 12(b)(6), asserting that (1) Campbell has not established a constitutional violation, much less one committed by him; (2) he is entitled to qualified immunity; and (3) the claims against him are duplicative of the claims against SPS.[6] (ECF No. 14.) Although Campbell references equal protection in the petition and explicitly argues it in her brief, Bilby largely ignores Campbell's equal protection arguments, only briefly attempting to distinguish one authority. (*See* ECF No. 22 at 7–11; ECF No. 23 at 4.) Instead, Bilby focuses almost exclusively on the alleged due process violation. (*E.g.,* ECF No. 23 at 6–9.) The Court will address both equal protection and due process.[7]

---

[5] When a defendant is sued in his individual capacity, he may be subjected to personal liability, supervisory liability, or both. *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011). Personal liability imposes liability on individual defendants who are personally involved in alleged constitutional violations. *Id.* Supervisory liability imposes liability on defendant-supervisors who create, promote, or carry out policies that deprive plaintiffs of their constitutional rights. *Id.* at 1163–64.

[6] Bilby additionally argues that any GTCA claims against him must be dismissed, as Oklahoma law shields employees acting within the scope of their employment. (ECF No. 14 at 20 (citing Okla. Stat. tit. 51, § 163(C)).) Campbell is not asserting any GTCA claims against Bilby, and the Court need not address this argument further.

[7] The federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam); *see also* A. Benjamin Spencer, 5A Fed. Prac. & Proc. (Wright & Miller) § 1357 (4th ed.) ("the district court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible legal theory").

## *Analysis*

### I. Standard of Review – Qualified Immunity & 12(b)(6)

Campbell brings her claims against Bilby under 42 U.S.C. § 1983, which states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

The doctrine of qualified immunity shields state actors "from damages actions unless their conduct was unreasonable in light of clearly established law." *Gutierrez v. Cobos*, 841 F.3d 895, 899 (10th Cir. 2016) (citation and internal quotation marks omitted). When an individual defendant asserts qualified immunity, there is a presumption that he is immune from suit. *Sanchez v. Guzman*, 105 F.4th 1285, 1292 (10th Cir. 2024). To overcome this presumption, it is the plaintiff's burden to show (1) the defendant's conduct violated a constitutional right, and (2) the right was clearly established at the time of the alleged misconduct. *Id.* If this burden is not met, the defendant is entitled to qualified immunity. *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019).

The Court applies "the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). To survive a 12(b)(6) motion to dismiss, "a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). All such reasonable inferences are resolved in the plaintiff's favor.

5

*Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations and footnotes omitted). A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions" or a "formulaic recitation" of the elements. *Id.* at 555.

Taken together, the Court considers whether Campbell "allege[d] sufficient facts that show—when taken as true—[Bilby] plausibly violated [B.C.'s] constitutional rights, which were clearly established at the time of the violation." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012).

## II.   "Duplicative" Claims

As a preliminary matter, the Court rejects Bilby's arguments that the claims against him are "official capacity claims" that must be dismissed as duplicative. (ECF No. 14 at 17–19; ECF No. 23 at 5–6.)

In a § 1983 action, a state official may be sued in his official and/or individual capacity. A suit against a defendant in his individual capacity "seek[s] to impose personal liability upon a government official for actions taken under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* (quoting *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 n.55 (1978)). Such claims may be brought in the name of the officer, in his official capacity. *See, e.g., Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015) (noting "a suit against Sheriff Glanz in his official capacity as sheriff is the equivalent of a suit against Tulsa County" (cleaned up)). Or, if the entity is already a defendant in the case, such claims may be dismissed as redundant. *See*

6

*Bennett v. Johnson*, No. 09-CV-612-TCK-PJC, 2010 WL 2465499, at *5 (N.D. Okla. June 11, 2010) ("Because the City is already a Defendant in this lawsuit, the 'official capacity' claims against [the officer] are redundant and may be dismissed.").

Bilby sidesteps Plaintiff's specific invocation of "individual capacity." (ECF No. 5-18 ¶ 3.) Instead, he argues that, because "all actions taken by Defendant Bilby were in his official capacity as Superintendent," he cannot be held individually liable. (ECF No. 14 at 19.) The Supreme Court explicitly rejected this argument over 30 years ago. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) (rejecting argument that "state officials may not be held liable in their personal capacity for actions they take in their official capacity"). As explained in *Hafer*, § 1983 provides a remedy for individuals who have been deprived of their constitutional rights by state officials acting under color of state law. *Id.* at 27–28. This means Bilby can be held individually liable for his actions *precisely because* of his authority as Assistant Superintendent and Acting Principal. *See id.* at 27–28 ("The requirement of action under color of state law means that Hafer may be liable for discharging respondents precisely because of her authority as auditor general. We cannot accept the novel proposition that this same official authority insulated Hafer from suit."). Campbell's individual capacity claims against Bilby are cognizable and are not duplicative of her claims against SPS.

## III. Due Process: Danger Creation Theory

Campbell claims Bilby personally violated B.C.'s due process rights by failing to investigate known incidents of bullying and sexual harassment. (ECF No. 5-18 ¶ 30; ECF No. 22 at 11–12.)

The Due Process Clause ensures that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

7

Generally, state actors are only liable under § 1983 for their own constitutionally violative acts and not for the acts of third parties. *Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008). There are, however, two exceptions to this rule—the special relationship doctrine and the danger creation theory. *Uhlrig v. Harder*, 64 F.3d 567, 571–72 (10th Cir. 1995). Plaintiff asserts the danger creation theory is applicable here. (ECF No. 5-18 ¶ 94; ECF No. 22 at 11.)

Under the danger creation theory, state officials may be held liable for third-party acts "where those officials 'created the danger' that caused the harm." *Seamons v. Snow*, 84 F.3d 1226, 1236 (10th Cir 1996). To invoke this exception, a plaintiff must first show as a threshold matter (1) private violence and (2) affirmative state conduct that places the plaintiff in danger. *Hernandez v. Ridley*, 734 F.3d 1254, 1259 (10th Cir. 2013); *see also Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006) (explaining this "narrow exception" only applies when a state actor "affirmatively acts to create, or increases a plaintiff's vulnerability to, danger from private violence" (quoting *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001))). If these preconditions are met, a plaintiff must then allege the following:

> (1) defendant created the danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendant[] acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking.

*Hernandez*, 734 F.3d at 1259 (cleaned up).

Bilby contends Campbell has not alleged facts establishing the "affirmative conduct" precondition and the "conscience shocking" element of her claim. (ECF No. 14 at 13; ECF No. 23 at 7–9.) The Court agrees that Campbell has not alleged any affirmative

conduct on behalf of Bilby. It does not address whether Bilby's actions shock the conscience.

The state-created danger theory requires Campbell to allege facts demonstrating Bilby's affirmative conduct created or increased the danger to B.C. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002). Affirmative conduct generally involves "an immediate threat of harm, which by its nature has a limited range and duration" that is "directed at a discrete plaintiff rather than the public at large." *Id*. Mere negligence or inaction does not satisfy the affirmative conduct requirement. *Estate of B.I.C. v. Gillen*, 710 F.3d 1168, 1173 (10th Cir. 2013) ("Our precedents consistently conclude that mere negligence or inaction is not enough.").

Here, Campbell relies on inaction—*i.e.,* the failure to investigate and issue discipline—to support a substantive due process violation, but this is insufficient under Tenth Circuit precedent. *See, e.g., Ruiz*, 299 F.3d at 1183 (finding social worker's failure to conduct background check on childcare facility that later caused an infant's death did not satisfy affirmative conduct precondition); *see also Jane Doe No. 2. v. Oologah-Talala Indep. Sch. Dist. No. 4*, No. 21-CV-240-JDR-SH, 2024 WL 1357612, at *2 (N.D. Okla. Mar. 29, 2024) (finding school resource officer's failure to report or conduct investigation of alleged sexual harassment did not satisfy affirmative conduct precondition). Campbell has not alleged facts plausibly showing that Bilby's affirmative conduct increased or created the danger to B.C.

IV.    **Equal Protection: Student-on-Student Sexual Harassment**

Campbell next claims Bilby violated B.C.'s equal protection rights through his failure to act when informed that SPS students were bullying and sexually harassing B.C. based on her LGBTQ+ status. (ECF No. 22 at 7–10.) Campbell bases her claim on the

9

Tenth Circuit's decision in *Murrell v. School District No. 1, Denver*, 186 F.3d 1238 (10th Cir. 1999), which recognized that a school administrator's deliberate indifference to student-on-student sexual harassment can support equal protection liability. Before determining if Campbell has alleged an equal protection violation, the Court first addresses the supervisory nature of a claim brought under *Murrell* and the state of such claims following the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

### A. The *Murrell* Claim

The Equal Protection Clause guarantees that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In *Murrell*, the Tenth Circuit found that a state official could be liable under § 1983 for violating the Equal Protection Clause "upon a showing of deliberate indifference to known sexual harassment." 186 F.3d at 1250; *see also Schaefer v. Las Cruces Pub. Sch. Dist.*, 716 F. Supp. 2d 1052, 1066 (D.N.M. 2010) (noting sexual harassment by a third party can cause a supervisor to be liable "not for the harasser's conduct, per se, but for failure to take adequate steps to stop it"). Deliberate indifference is something more than "mere negligence." *Murrell*, 186 F.3d at 1250. To state a claim of deliberate indifference in this context, the plaintiff must allege that the state actor (1) knew of the harassment and (2) acquiesced in the harassment by refusing to reasonably respond to it. *Id.*

While *Murrell* does not speak in terms of personal or supervisory liability, it relied heavily on supervisory liability case law in articulating this standard. *Id.* (citing *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992); *Noland v. McAdoo*, 39 F.3d 269, 271 (10th Cir. 1994); and *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995)). All the cited authorities had their origins in the Tenth Circuit's analysis in *Woodward*, where it stated, "We are persuaded that the proper articulation of the test for

supervisory liability under section 1983 is that set forth by the Third Circuit . . . , where it was stated that supervisor liability requires 'allegations of personal direction or of actual knowledge and acquiescence.'" 977 F.2d at 1400; *see also Noland*, 39 F.3d at 271 (quoting *Woodward* as stating, "if a supervisor or employer participates in or consciously acquiesces in sexual harassment by an outside third party or by co-workers, . . . the supervisor or employer may[, nevertheless,] be liable"); *Jojola*, 55 F.3d at 490 (citing *Woodward* for the proposition that "plaintiffs must allege, and prove, defendants actually knew of and acquiesced in [the employee's] behavior").

Other courts have similarly recognized the "compelling parallels between [a supervisory liability] claim and an equal protection claim premised on a school administrator's deliberate indifference to known student-on-student sexual harassment." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 702 (4th Cir. 2018) (citing *Murrell* and noting "[w]hen confronting a school administrator's deliberate indifference to student-on-student sexual harassment, our sister circuits have relied on the principle that a government official can be liable for a subordinate's sexually harassing behavior").

The question then becomes how a *Murrell*-type claim can be shown after *Iqbal*'s rejection of longstanding supervisory liability cases.

### B. *Iqbal's* Rejection of Mere Knowledge and Acquiescence

In *Iqbal*, a Muslim Pakistani citizen was arrested, detained, and held in extremely restrictive conditions in response to a post-9/11 Department of Justice policy. 556 U.S. at 667–68. He brought a *Bivens* action based on a theory of supervisory liability against Attorney General John Ashcroft and FBI Director Robert Mueller. *Id.* at 669. Iqbal alleged Ashcroft and Mueller "knew of, condoned, and willfully and maliciously agreed to

subject [him] to harsh conditions of confinement as a matter of policy, solely on account of his religion, race, and/or national origin." *Id.* (cleaned up).

The Supreme Court noted that, "[w]here the claim is invidious discrimination in contravention of the First and Fifth Amendments, our decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose." *Id.* at 676. Iqbal disagreed—arguing "that, under a theory of 'supervisory liability,' petitioners can be liable for 'knowledge and acquiescence in their subordinates' use of discriminatory criteria to make classification decisions among detainees.'" *Id.* at 677. The Supreme Court rejected this argument as inconsistent with the bar on vicarious liability. *Id.*; *see also id.* at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the *official's own individual actions*, has violated the Constitution." (emphasis added)).

Indeed, the Supreme Court found "the term 'supervisory liability' is a misnomer" and that it was "purpose" rather than "knowledge" that was required. *Id.* at 677. Following *Iqbal*, the Tenth Circuit has concluded that a plaintiff cannot plausibly allege a § 1983 claim against a defendant-supervisor by showing he "behaved knowingly or with deliberate indifference that a constitutional violation would occur at the hands of his subordinates, unless that is the same state of mind required for the constitutional deprivation he alleges." *Dodds v. Richardson*, 614 F.3d 1185, 1204 (10th Cir. 2010) (citation and internal quotation marks omitted). Given *Murrell's* dependency on supervisory liability case law in establishing the standard for student-on-student sexual harassment, the reasoning of *Iqbal* and *Dodds* applies equally here.

### C. The *Murrell* Claim Post-*Iqbal*

The state of mind required to establish an equal protection violation is purposeful discrimination. *Bird v. W. Valley City*, 832 F.3d 1188, 1208 (10th Cir. 2016) (using the term intentional, but citing cases using the term purposeful). Purposeful discrimination requires more than "intent as volition" or "intent as awareness of consequences"; instead, it requires "a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Iqbal*, 556 U.S. at 676–77 (cleaned up); *see also T.E. v. Grindle*, 599 F.3d 583, 589 (7th Cir. 2010) ("the Equal Protection Clause does not require that the state actor be motivated *solely* by the plaintiff's membership in a protected class").

To state a *Murrell*-type claim for student-on-student sexual harassment post-*Iqbal*, a plaintiff must allege (1) she was subjected to discriminatory peer harassment; (2) the school administrator responded to that harassment with deliberate indifference—that is, the administrator knew about the harassment and acquiesced in that conduct by refusing to reasonably respond to it; and (3) the administrator's deliberate indifference was motivated by a discriminatory intent.[8] *Feminist Majority*, 911 F.3d at 702–03.

---

[8] The Court recognizes that other courts within the Tenth Circuit, including in this district, have not added this third element—usually relying on *Murrell* without any reference to the effect of *Iqbal* and *Dodds*, or by assuming that the requisite state of mind is deliberate indifference. *See, e.g., Doe v. Roaring Fork Sch. Dist.*, 510 F. Supp. 3d 971, 977 (D. Colo. 2020) (effect of *Iqbal* and *Dodds* not raised); *R.C. by & through Culver v. Indep. Sch. Dist. No. 2*, No. 23-CV-478-JFJ, 2024 WL 3570014, at *3 (N.D. Okla. July 29, 2024) (same); *Lameda ex rel. S.L. v. Indep. Sch. Dist. No. 29*, No. CIV-21-119, 2021 WL 4302773, at *2 (W.D. Okla. Sept. 21, 2021) (same); *T.Y. v. Shawnee Mission Sch. Dist. USD 512*, No. 17-2589, 2018 WL 2722501, at *12 (D. Kan. June 6, 2018) (same); *Doe v. Taos Mun. Schs.*, No. 20-CV-01041, 2024 WL 4264507, at *12 (D.N.M. Sept. 23, 2024) (citing *Dodds* but finding, "the requisite state of mind for a sexual harassment case is deliberate indifference"). *But see Armenta ex rel. H.A. v. Indep. Sch. Dist. No. 5*, No. CIV-22-00659, 2024 WL 3089658, at *3 n.4 (W.D. Okla. June 21, 2024) ("Before *Iqbal*, deliberate indifference would have been the appropriate standard.").

13

### D. Campbell Has Failed to Plead that Bilby Acted with the Requisite State of Mind

Campbell meets part, but not all, of her burden of pleading an equal protection claim. Campbell has pled that Bilby was deliberately indifferent to known sexual harassment. She has alleged that (1) students regularly called B.C. homophobic slurs, physically assaulted her, and, on one occasion, purposefully pulled off her sweatshirt and bra (ECF No. 5-18 ¶¶ 12, 23–24, 37, 40); (2) Bilby was aware of this harassment (*see id*. ¶¶ 29–30, 47); and (3) Bilby did not investigate these acts, interview any witnesses, or issue any discipline (*id*. ¶¶ 30, 61). Further, Bilby does not dispute that B.C. suffered sexual harassment. (ECF No. 23 at 2 (stating that Plaintiff "details the allegations that her peers were harassing" B.C.); *id*. at 9 (noting Plaintiff's supervisory claims are premised on deliberate indifference to "sexual harassment against" B.C.).)

However, Campbell has not pled that Bilby purposefully discriminated against B.C. Because Campbell has not alleged Bilby acted with the state of mind necessary to violate B.C.'s equal protection rights, Campbell's claim is dismissed without prejudice.[9] *See Armenta*, 2024 WL 3089658, at *2–3 & n.4 (dismissing § 1983 equal protection claim for student-on-student harassment, because complaint failed to allege superintendent acted with purposeful discrimination).

---

[9] To be sure, Plaintiff may plead the requisite purposeful discriminatory intent by reference to circumstantial evidence, including the official's efforts to downplay harassment and his inaction in attempting to stop known harassment. *See Feminist Majority*, 911 F.3d at 703; *Grindle*, 599 F.3d at 589. Here, the petition alleges that faculty members witnessed and allowed other student-on-student homophobic harassment to continue with impunity. (ECF No. 5-18 ¶ 39.) But, it is unclear whether the petition is alleging that Bilby, himself, failed to act in the face of known sexual harassment based on B.C.'s LGBTQ+ status or otherwise acted in a way that indicated he had the requisite discriminatory intent. Indeed, it is unclear whether Plaintiff is even attempting to plead that Bilby had such intent, which is unsurprising given other courts' and the parties' apparent agreement that only deliberate indifference was required by law. This is something that Plaintiff may be able to clarify by amendment to her pleading.

V.  **Failure to Train and Supervise SPS Teachers**

Campbell last claims Bilby violated B.C.'s constitutionally protected rights through his "failure to train, supervise, and discipline his subordinates." (ECF No. 5-18 ¶ 95.) This claim fails for the same reasons as the underlying due process and equal protection claims.

A.  **Equal Protection**

To the extent the claim of failure to train and supervise is based on an equal protection violation, Campbell has not alleged Bilby acted with the necessary state of mind—*i.e.,* purposeful discrimination. (*See* Section IV(D), *supra*.) Thus, Campbell has not plausibly alleged such a claim. *Cf., e.g., Galvan v. Bd. of Cnty. Commissioners*, No. CV 14-619, 2016 WL 10539052, at *4 (D.N.M. May 6, 2016) (dismissing equal protection supervisory liability claim for failure to show purposeful discrimination).

B.  **Due Process**

To the extent the claim of failure to train and supervise is based on a due process violation, Campbell has alleged that Bilby acted with the necessary state of mind—*i.e.,* deliberate indifference. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) (assuming without deciding that deliberate indifference is the applicable state of mind). However, this claim must fail for another reason: Campbell has not alleged an underlying due process violation committed by Bilby's subordinates.

In order to bring a § 1983 supervisory liability claim based on subordinate conduct, there must be an underlying constitutional violation committed by the subordinate. *Sherman v. Klenke*, 653 F. App'x 580, 589 (10th Cir. 2016) ("for a claim of supervisory liability to succeed, the plaintiff must establish a subordinate's underlying constitutional

15

violation") (unpublished).[10]  Here, Campbell does not allege that Bilby's subordinates violated B.C.'s due process rights.  Campbell alleges that Middle School teachers regularly witnessed the bullying and harassment B.C. was experiencing but failed to fill out official incident reports, discipline offending students, or investigate the matters further.  (*See e.g.,* ECF No. 5-18 ¶¶ 15, 25, 34, 36, 39–40.)  All of Campbell's allegations relate to inaction, which does not satisfy the affirmative conduct precondition necessary to establish due process liability.  (*See* Section III, *supra*.)  Because Campbell has not plausibly alleged an underlying constitutional due process violation committed by one of Bilby's subordinates, Campbell cannot assert a violation of her rights by failure to train and supervise that subordinate.  *See Hurst v. Madera*, No. 16-cv-01914, 2018 WL 684769, at *9–10 (D. Colo. Feb. 2, 2018) (dismissing failure to supervise claim because plaintiff did not sufficiently allege a constitutional violation committed by defendant-supervisor's subordinate); *BPS v. Board of Trustees for Colo. Sch. for the Deaf and Blind*, No. 12-cv-02664, 2014 WL 6990312, at *10–13 (D. Colo. Apr. 28, 2014) (same, but with failure to train claim).

## *Conclusion*

The Court recognizes that its ruling today on the requirements for an equal protection claim are contrary to the parties' expectations when pleading and briefing their arguments.  As Plaintiff does not seek leave to amend in her response brief, the Court has not addressed amendment in this order.  The Court does not consider such a request to be affected by the original scheduling order, which was issued well before the parties had

---

[10] Unpublished decisions are not precedential, but they may be cited for their persuasive value.  10th Cir. R. 32.1(A).

notice of the Court's position on this issue. Any motion for leave to amend shall be filed within 14 days of this order.

IT IS THEREFORE ORDERED that *Defendant Johnny Bilby's Motion to Dismiss* (ECF No. 14) is GRANTED. Plaintiff's claims against Defendant Johnny Bilby are DISMISSED WITHOUT PREJUDICE.

ORDERED this 19th day of November, 2024.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT