## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) B. C., a minor child, by and through her mother and next friend, LEANNE CAMPBELL, <br><br>Plaintiff, <br><br>v. <br><br>1) INDEPENDENT SCHOOL DISTRICT NO. 33 of Creek County, Oklahoma, (a.k.a "SAPULPA PUBLIC SCHOOLS"), 2) JOHNNY BILBY, an individual, <br><br>Defendants. | ) ) ) ) ) ) ) ) ) Case No. 24-CV-59-SH ) ) ) ) ) ) ) ) ) |

### THIRD AMENDED COMPLAINT

COMES NOW Plaintiff, B.C., a minor child, by and through her mother and next friend, LeAnne Campbell ("Campbell"), and for her *Third Amended Complaint* against the above-named Defendants. Plaintiff alleges and states as follows:

### PARTIES

1. Plaintiff, B. C., is a minor child, and is currently a citizen and resident of Creek County, Oklahoma.

2. Defendant, Independent School District No. 33 of Creek County, Oklahoma, commonly known as Sapulpa Public Schools and including Sapulpa Middle School ("Sapulpa School District"), is a local school district and public body corporate pursuant to Okla. Stat. tit. 70, §§5-105, and is defined as a political subdivision pursuant to Okla. Stat. tit. 51, §152(11)(b) with its principal place of business located in Creek County, Oklahoma.

3. Defendant Johnny Bilby ("Mr. Bilby" or "Bilby") was, at all pertinent times, the Assistant Superintendent of Sapulpa School District. Mr. Bilby is being used in his individual capacity.

## JURISDICTION AND VENUE

4. The jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivations of rights secured by the Fifth and/or Fourteenth Amendments to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

5. The jurisdiction of this Court is also invoked under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and the laws of the United States, particularly the Fifth and/or Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

6. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial District.

## GOVERNMENTAL TORT CLAIMS ACT

7. This action is timely brought pursuant to and in compliance with the provisions of the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51, §151 et. seq.

8. On November 30, 2022, pursuant to Okla. Stat. tit. 51, §§156(A) and (B), B.C. filed this Claim against the Sapulpa School District by presenting Notice of the Claim to the Superintendent of the Sapulpa School District and to the Clerk of the Board of Education of Sapulpa Public Schools (i.e., the Board of Education of the Sapulpa School District), within the one (1) year statute of limitations.

9. The written Notice of B.C.'s Claim against the Sapulpa School District presented to the Clerk of the Board of Education of the Sapulpa School District, as the governing body of the political subdivision pursuant to Okla. Stat. tit 70 §5-106, was appropriate pursuant to Okla. Stat. tit. 51, §156(D).

10. Additionally, presenting written Notice of the Claim against the Sapulpa School District to the Superintendent of the Sapulpa School District, as the executive officer of the governing body

of the political subdivision pursuant to Okla. Stat. tit 70, §5-106, was appropriate pursuant to Okla. Stat. tit. 51, §156(D).

11. Plaintiff filed her Petition in Creek County District Court within 180 days of the denial of her GTCA claim.

**STATEMENT OF FACTS**

12. On January 26, 2022, B.C., a 7th grade student at Sapulpa Middle School ("School"), was physically assaulted by another older, 8th grade student, M.M., and was verbally harassed and bullied by several other middle school students in the School cafeteria during the first hour lunch period in the presence and under the supervision of several School employees, including Bruce Plummer, Renee Adkins, and Alex Burns.

13. B.C. identifies as being a part of the LGBTQ+ community.

14. Specifically, while B.C. was sitting at her lunch table, M.M. poured a tray of applesauce over B.C.'s head. Several other students at the table stood by and witnessed this assault, while verbally harassing and bullying B.C., using offensive language, including homophobic slurs.

15. Immediately after the incident, several students who were witnesses reported it to Mrs. Adkins. Mrs. Adkins sent B.C. to speak with Mrs. Burns. Mrs. Burns and the School's Special Education teacher, Mrs. Noble, took B.C. to the School office where B.C. gave a verbal account of the incident.

16. Mrs. Noble then took B.C. to the special education classroom where B.C. showered and changed clothes.

17. No administrators, educators, or any other School employees contacted Ms. Campbell after the January 26th incident. Nor did any administrators, educators, or any other School employees fill out an official report regarding the incident or provide B.C. with a form on which to fill out a report.

3

18. Later that day, B.C. reported the incident to her mother, Ms. Campbell. Ms. Campbell immediately contacted the School's Counselor's Office in an effort to make an official report, but no School faculty or staff member answered the call or followed up on the voicemail Ms. Campbell left detailing the incident.

19. On January 31, 2022, at Sapulpa Middle School, T.S., another student who had participated in the verbal harassment and bullying on January 26, 2022, stole B.C.'s personal property, a set of headphones, from her person and purposefully broke the headphones beyond repair during B.C.'s third hour math class in the presence and under the supervision of the math teacher, Mrs. Allison Parks.

20. B.C. reported the incident to both Mrs. Parks and, later in the day, to Ms. Campbell. Again, Ms. Campbell immediately contacted the School's Counselor's Office in an effort to make an official report, but no School faculty or staff member answered the call or followed up on the voicemail Ms. Campbell left detailing the incident.

21. The School took no steps to investigate these two serious instances of bullying and harassment that both B.C. and her mother reported to multiple faculty members.

22. On February 2, 2022, at Sapulpa Middle School, B.C. was physically assaulted, sexually harassed, and bullied by several older, eighth grade students during that day's fourth hour class period in the presence and under the supervision of the gym teacher, Mr. Lee Wilson.

23. On that date, during fourth hour, B.C. was in art class, taught by Allison Ruth. Due to an unrelated class disruption, Mrs. Ruth kept half of her class (who were involved in the disruption) in the art room, and sent the other half of the class (who had no role in the disruption) to the gymnasium, where another group of students was in gym class.

24. During that gym class, Mr. Wilson had the students participate in a dangerous "game" that is akin to "human tug-of-war." The game consisted of a line of students on either side of the center

4

line of the basketball court where each line of students would attempt to pull another student at the center of the two lines over to their respective side to join their team. Only the first students at the start of the two lines were to pull the arms of the middle student to move them to either team's side.

25. When it was B.C.'s turn to be in the center during the game, one older male student at the start of one line pulled B.C's arm, while the two older female students both pulled on B.C.'s other arm. The older students began to yank B.C. with excessive force causing injury to her arm. B.C. asked the older students repeatedly to stop pulling her arms because she was in serious physical pain. The older students did not stop pulling despite B.C.'s protests.

26. During the "game," the older students purposefully and forcibly pulled B.C.'s sweatshirt and bra off exposing B.C.'s body to the other students and to Mr. Wilson. Again, no students were disciplined by Mr. Lee Wilson nor any other Sapulpa Middle School employee. Further, Mr. Lee Wilson did not stop the game from continuing and let the remaining students play, as B.C. was left to redress and sit out for the remainder of the class on the side of the gymnasium wall.

27. Mr. Wilson did not report the incident to administration, discipline any of the offending students, or provide B.C. with any kind of form on which to fill out a report.

28. B.C. was physically hurt and mortified by this cruel and dangerous act of bullying and assault. She did not speak for the remainder of the day until her sixth hour science class, when she finally burst into tears. After breaking down during science class, B.C. was sent to the principal's office by science teacher Nicholas Williams.

29. When B.C. arrived at the principal's office to make a formal report of the bullying, she was met only by a parent volunteer who was filling in that day, as the School had no full-time principal

5

during the Spring 2022 semester.[1]

30. Once B.C. told her mother about this incident, Ms. Campbell again called the School but was forced, once again, to leave a voicemail.

31. Mrs. Ruth, the art teacher, returned Ms. Campbell's call and apologized. After receiving the call from Mrs. Ruth, Ms. Campbell was finally able to arrange a meeting with Mr. Bilby to discuss the ongoing bullying and harassment of B.C.

32. During the meeting, which occurred in February 2022, Mr. Bilby was unhelpful, to say the least. He failed to launch an investigation into any of the acts of bullying, did not interview any student or teacher witnesses, and issued no discipline. His only "resolution" was to send B.C. home to finish the remainder of the semester online.

33. In August 2022, immediately after B.C. returned to Sapulpa Middle School to begin the Fall 2022 semester in-person, B.C. was sexually and verbally harassed and bullied by another male student in the Sapulpa Middle School cafeteria during the second hour lunch period in the presence and under the supervision of several Sapulpa Middle School employees.

34. While B.C. was in the lunch line, another male student harassed her using extreme sexually suggestive and offensive language.

35. This incident took place in the presence of several other students and School faculty members.

36. Immediately after the incident occurred, B.C. went to the School Counselor's office and

---

[1] Upon information and belief, in 2022, Defendant Bilby was serving as the Acting-Principal as well as the Assistant-Superintendent for Sapulpa Middle School. Upon information and belief, the former-Principal and former Vice-Principal were on leave for allegations that the Principal and Vice Principal had engaged in an inappropriate relationship. Mr. Bilby was only available to serve in the role of Acting-Principal three days each week, and was off-campus the other two days, leaving the principal's office vacant. Upon information and belief, Bruce Plummer, Sapulpa School District Dean of Students was the Acting-Vice Principal during this time.

6

made a verbal report to Mrs. Burns. As B.C. didn't know the offending student's name, Mrs. Burns said that she would "look into it." However, the Mrs. Burns and the School failed to conduct even the most basic investigation into this act of bullying, failing to even learn the student's name. No School employee followed up with B.C. or her mother regarding the incident and no one was disciplined.

37. On November 9, 2022, two Sapulpa Middle School students, D.A. and M.T., threatened to "jump" B.C. in the hallway of the School. B.C. hid from the students in the bathroom where she texted her mother to inform her of the verbal and threatening behavior.

38. Ms. Campbell called the School's administrative office to inform them of the frightening situation, but was forced to call multiple times before anyone answered. Once someone finally answered, a School official finally walked down to the bathroom and escorted B.C. out of the bathroom. The offending students were not punished for their behavior.

39. From January 2022 to present, B.C. has been the victim of ongoing harassment and bullying from numerous students, many of whom were involved in the incidents listed above. These students regularly call B.C. derogatory names and slurs, including "bitch," "dumb slut," "dirty skank," "faggot," "tranny," etc.

40. B.C. is not the only School student who has experienced this kind of harassment. Other students who identify, or who are perceived to identify, as members of the LGBTQ+ community are routinely targeted by verbal harassment and bullying.

41. On numerous occasions, School faculty members have witnessed students hurling homophobic slurs, transphobic slurs, and similar types of demeaning epithets at students who identify, or who are perceived to identify, as members of the LGBTQ+ community, but the offending students have never been disciplined.

42. Throughout the Fall 2023 semester, B.C. was frequently tormented during her physical

education ("P.E.") class. B.C. was regularly physically assaulted and called slurs and derogatory names in the presence of other students and the P.E. teacher. No students were ever punished for their appalling behavior.

43. In October 2023, during a P.E. class, B.C. again was forced to participate in the "human tug-of-war" "game." During the "game," the other students began aggressively pulling on B.C.'s arms, causing her severe pain. The students yanking on B.C.'s arms were the same ones who had assaulted her in P.E. class in February 2022.

44. When B.C. complained to the P.E. teacher that the students were injuring her, the teacher responded that B.C. could either participate, i.e., allow the bullies to continue inflicting pain on her, or she could sit out and get a zero percent grade for the day. B.C. decided to sit out and was, indeed, given a zero.

45. On other occasion in October 2023, B.C.'s P.E. class played two-hand-touch football. The students were specifically instructed not to tackle each other.

46. During the game, the same male students who verbally and physically bullied B.C. throughout the Fall 2023 semester intentionally tackled B.C. to the ground rather than follow the rules of the game. There were no repercussions for the male students who tackled B.C.

47. In one P.E. class in November 2023, the students were instructed to play dodgeball. One of the rules of the game was that students were forbidden from intentionally aiming at other students' heads.

48. During the game, the same three male students who verbally and physically bullied B.C. throughout the Fall 2023 Semester chose to target B.C. in the game, each throwing the playground balls directly at B.C.'s face while calling her the same slurs and derogatory names as before in October 2023.

49. B.C. told her mother about the dodgeball incident and Ms. Campbell emailed Mr. Bilby

reporting the ongoing bullying and asking the School to intervene on B.C.'s behalf. Neither Mr. Bilby nor the School took any action, no students faced repercussions, and the gym teacher continued allowing students to play dodgeball during P.E., with no further instruction regarding safety while playing the game.

50. Mr. Bilby's failure to act in the face of multiple reports that B.C. was the target of ongoing bullying and harassment based on her LGBTQ+ status served to ratify the "right" of other students to continue their abhorrent, discriminatory behavior free from any disciplinary consequences. Mr. Bilby's failures, as alleged herein, indicate a discriminatory intent to his acts and omissions.

51. To date, no students have been punished for their repeated, ongoing harassment and bullying aimed at B.C.

### FIRST CAUSE OF ACTION: NEGLIGENT SUPERVISION (GTCA)

52. The Plaintiff incorporates by reference, the statements and allegations contained in paragraphs 1-51, *supra*.

53. The Sapulpa School District owes a duty to exercise reasonable care to control the conduct of students so as to prevent them from harming other students, like B.C., while they are in the School's custody .

54. On numerous occasions, including, but not limited to, January 26, 2022, January 31, 2022, February 2, 2022, August 24, 2022, October 2023, and November 2023, B.C. was verbally harassed and/or physically assaulted in the presence and under the supervision of Sapulpa Middle School employees, including, but not limited to, Mr. Wilson, Mrs. Burns, Mrs. Adkins, and Mrs. Noble, as described, *supra*.

55. The Sapulpa School District failed to adequately supervise the students during school hours where the assaults and harassment occurred.

56. As a direct and proximate cause of the Sapulpa School District's' failure to supervise

students, B.C. was physically assaulted and verbally harassed by several other Sapulpa Middle School students and suffered damages as a result.

57. The damages suffered by B.C. include physical harm, pain, suffering, and extreme mental and emotional distress.

## SECOND CAUSE OF ACTION: NEGLIGENT OPERATIONAL EXECUTION OF THE SCHOOL DISTRICT'S ANTI-BULLYING POLICY (GTCA)

58. The Plaintiff incorporates by reference, the statements and allegations contained in paragraphs 1-57, *supra*.

59. The Sapulpa School District owes a duty to its students to carry out the operational execution of the school district's anti-bullying policy, discretionarily adopted by the Sapulpa School District as the "Sapulpa School District's Bullying-Harassment Policy: Section 540.1.7 Student Bullying Prevention and Intervention", in a nonnegligent manner.

60. On multiple occasions in 2022 and 2023, as described in detail, *supra*, B.C. was harassed and bullied by other students in the presence of multiple School employees.

61. Sapulpa School District's Bullying-Harassment Policy: Section 540.1.7 Student Bullying Prevention and Intervention requires any Sapulpa faculty or staff member who witness acts of bullying or who has reliable information that would lead a reasonable person to suspect that a student is the target of bullying is required to submit a report to the school principal or his/her designee on an official report form.

62. Despite the myriad instances of physical and social bullying against B.C. in the presence and under the supervision of several Sapulpa Middle School employees, as discussed, *supra*, no Sapulpa Public School faculty or staff member who witnessed these acts of bullying submitted a report to the school principal or his/her designee on an official report form.

63. Sapulpa School District's Bullying-Harassment Policy: Section 540.1.7 Student Bullying

10

Prevention and Intervention requires any alleged incidents of bullying reported to school officials to be investigated to "determine (i) whether the bullying conduct occurred, (ii) the severity of the incident(s), and (iii) the potential for future violence…" via student and staff interviews.

64. Despite Ms. Campbell's repeated reports that B.C. was being physically and socially bullied, no students or staff, to date, have been interviewed and no disciplinary action has been taken by acting principal and Sapulpa Public School assistant-superintendent, Johnny Bilby.

65. The Sapulpa School District failed to carry out the operational execution of the school district's Anti-Bullying Policy, Sapulpa School District's Bullying-Harassment Policy: Section 540.1.7 Student Bullying Prevention and Intervention in a nonnegligent manner.

66. As a direct and proximate cause of Sapulpa School District's' failure to carry out the operational execution of the school district's anti-bullying policy, discretionarily adopted by the Sapulpa School District as the "Sapulpa School District's Bullying-Harassment Policy: Section 540.1.7 Student Bullying Prevention and Intervention", in a nonnegligent manner, B.C. was repeatedly physically and socially bullied by older, eighth grade, Sapulpa Middle School students and several other Sapulpa Middle School Students and suffered damages as a result.

67. The damages suffered by B.C. include physical harm, pain, suffering, and extreme mental and emotional distress.

### THIRD CAUSE OF ACTION: VIOLATION OF TITLE IX

68. The Plaintiff incorporates by reference, the statements and allegations contained in paragraphs 1-67, *supra*.

69. Title IX of the Education Amendments Act of 1972 ("Title IX") provides that "[n]o person…shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…" 20 U.S.C. § 1681(a).

70. Defendant Sapulpa Public Schools is an education institution that receives Federal financial assistance. Therefore, the School has an obligation to comply with the terms and provisions of Title IX.

71. Sexual harassment and/or sexual abuse of a student is a form of discrimination on the basis of sex and is an actionable claim under Title IX.

72. Title IX's prohibition against sex-based discrimination includes discrimination on the basis of sexual orientation and gender expression.

73. B.C. suffered sexual harassment, sexual assault, and harassment and bullying on the basis of her gender and gender expression.

74. Defendant Sapulpa Public Schools was deliberately indifferent to the acts of abuse, harassment, and discrimination as set forth herein.

75. Numerous School employees had actual knowledge of the acts of abuse, harassment, and discrimination as set forth herein.

76. The employees who had actual knowledge had the authority to take corrective action to end the unlawful conduct yet did not do so.

77. The abuse, harassment, and discrimination suffered by B.C. was so severe, pervasive, and objectively offensive that she was excluded from participation in, denied the benefits of, and/or subjected to discrimination in the educational program provided by the School.

78. B.C.'s exclusion from participation in, denied the benefits of, and/or subjected to discrimination was on the basis of sex.

79. As a direct and proximate result of Sapulpa Public Schools' violations of Title IX, B.C. endured physical pain and suffering, mental anguish and emotional distress, anxiety, humiliation, embarrassment, and other damages.

**FOURTH CAUSE OF ACTION**
**42 U.S.C. § 1983**
**Violation of the 14th Amendment's Equal Protection Clause**

80. Paragraphs 1-79 are incorporated herein by reference.

**A. Sapulpa Public Schools**

81. The Fourteenth Amendment to the United States Constitution provides in part that no State shall "deny any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend XIV.

82. At all pertinent times, B.C. was a member of a specifically definable group, namely, a female student who identifies as being a part of the LGBTQ+ community.

83. Sapulpa Public Schools is a state actor acting under the color of state law.

84. Sapulpa Public Schools denied B.C. her right to Equal Protection of the Law by:

    a. Enacting and implementing inadequate policies concerning bullying, misconduct, and abuse;

    b. Failing to investigate alleged and substantiated acts of bullying, misconduct, and harassment;

    c. Failing to discipline students who repeatedly bully and harass other students, including, but not limited to, B.C.

    d. Improperly supervising and training faculty;

    e. Exhibiting deliberate indifference to the misconduct directed at B.C. and others like her.

85. Sapulpa Public Schools has an unconstitutional policy, practice, or custom of: 1) improperly and/or utterly failing to report bullying, harassment, and other misconduct; 2) improperly and/or utterly failing to investigate bullying, harassment, and other misconduct; 3) discounting the credibility of allegations of bullying, harassment, and other misconduct; 4) inadequately training

and supervising employees with regard to the investigation and reporting of bullying, harassment, and abuse.

86. These policies are attributable to a policymaker.

87. The resulting inadequate policies, practices, and/or customs and resulting failures allowed the misconduct and bullying to occur, resulting in the violation of B.C.'s Fourteenth Amendment right to Equal Protection.

88. Sapulpa Public Schools' unconstitutional policies/practices/customs were the moving force behind the violation of B.C.'s Fourteenth Amendment rights.

**B. Mr. Bilby**

89. Plaintiff was subjected to discriminatory peer harassment, as described in detail, *supra*. Mr. Bilby knew about the harassment and acquiesced in that conduct by refusing to reasonably respond to it.

90. By tolerating and thus encouraging the types of discrimination described, *supra*, including a School environment hostile to those in the LGBTQ+ community, Defendant Bilby has violated B.C.'s clearly established rights to Equal Protection of the Fourteenth Amendment to the United States Constitution to be free form sex-based discrimination under color of law.

91. Defendant Bilby is liable for deliberate indifference to discriminatory conduct directed at B.C. and others in the LGBTQ+ community based on their status and thus treated B.C. (and other students) differently based on their sex.

92. Mr. Bilby acted intentionally and with callous disregard for B.C.'s known statutory and constitutional rights.

93. Mr. Bilby held a supervisory position with Sapulpa Public Schools and was directly involved in the creation and implementation of policies, oversight, and training of School employees, including concerning bullying and harassment.

94. The need of additional and different training and supervision with respect to bullying and harassment was so obvious to Defendant Bilby that he was deliberately indifferent to the acts of School personnel.

95. Mr. Bilby's failure to train, supervise, and discipline his subordinates directly and proximately caused violations of B.C.'s federally protected rights, which caused B.C. to endure physical abuse, pain, suffering, mental pain and anguish.

96. As a direct and proximate result of Mr. Bilby's acts and omissions, including his failures to train and supervise, B.C. suffered injuries and damages as alleged herein.

WHEREFORE, the Plaintiff, B.C., respectfully prays this Court grant the relief sought, including but not limited to actual and compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from the date of filing suit, punitive damages, the costs of bringing this action, a reasonable attorneys' fee, along with such other relief as is deemed just and equitable.

Respectfully submitted,

/s/Daniel E. Smolen
Daniel E. Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Bryon D. Helm, OBA #33003
SMOLEN & ROYTMAN
701 South Cincinnati Avenue
Tulsa, OK 74119
P: (918) 585-2667
F: (918) 585-2669
*Attorneys for Plaintiff*


Kurt G. Arras, OBA #15967
900 Reunion Center

15

>Nine East Fourth Street
>Tulsa, OK 74103
>Phone: 918.587-1830
>Fax: 918.587.0721
>
>-and-
>
>Mary R. Bundren, OBA# 21947
>BUNDREN LAW FIRM, P.C.
>900 Reunion Center
>Nine East Fourth Street
>Tulsa, Oklahoma  74103
>Telephone: (918) 599-8600
>Facsimile (918) 599-8673
>
>*Attorneys for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of December 2024, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and the transmittal of a Notice of Electronic Filing to all counsel who have entered an appearance in this action.

>/s/ Daniel E. Smolen
>Daniel E. Smolen, OBA #19943